# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re: ) | |
|     ELAINE D. VINCENT, ) | Chapter 13 |
|               DEBTOR. ) | Case No. 07-40262-JBR |
| _____) | |
| ELAINE D. VINCENT, ) | |
|           PLAINTIFF, ) | |
| v. ) | AP No. 07-4092 |
| AMERIQUEST MORTGAGE COMPANY,) | |
|          DEFENDANT. ) | |
| _____) | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

This matter came before the Court for a hearing on the Motion of Ameriquest Mortgage Company (the "Defendant" or "Ameriquest") to Dismiss the Complaint [#17] and the Plaintiff's opposition thereto [ #27].[1]  The Defendant asserts that the six-count amended complaint must be dismissed because it fails to state a claim upon which relief may be granted, the claim under the Truth in Lending Act ("TILA") is time barred, and fraud has not been pled with specificity.  For the reasons set forth herein, the Motion is granted in part and denied in part.

**FACTS**

The Plaintiff resides at 7 Vine Street, Oxford, Massachusetts (the "Property") where she has lived for 28 years (Amended Complaint ¶ 5).  In approximately August 2005, the Property secured a note held by Option One Mortgage Company.  The Plaintiff's monthly mortgage payments to Option One, including real estate tax escrow and property insurance, were approximately $1,320.00 (Amended Complaint ¶ 11).  Interest on the Option One loan was charged at the rate of 6.25% (Amended Complaint ¶ 21).

---

[1] One business day before the hearing, Ameriquest sought leave to file a reply brief; the motion was denied.

In or around August 2005 the Plaintiff contacted the Defendant regarding refinancing the Option One loan (Amended Complaint ¶ 6).[2] According to the Plaintiff, she had a telephone interview with someone from Ameriquest during which she informed the interviewer that she was unemployed but needed to refinance the Property to reduce her monthly payments (Amended Complaint ¶¶ 7, 8, and 9). The Plaintiff also avers that the interviewer told her to stop paying Option One (Amended Complaint ¶ 10). Ameriquest prepared the loan application. The application reflects that the Plaintiff is, and had been for four years, "self-employed" as a "Research Assistant" (Amended Complaint ¶¶ 12, 13, 14, and 16). The application lists the Plaintiff's monthly income as $4,800, all from "overtime," while her monthly housing expenses are listed at $1,517.33 (Amended Complaint ¶¶ 17 and 18). In August 2005 the Plaintiff's actual income was less than $2,800 a month (Amended Complaint ¶ 20). The application lists the Property's appraised market value at $285,000 (Amended Complaint ¶ 19). The Amended Complaint does not allege what the Plaintiff believes was the fair market value at that time.

In October 2005 the Plaintiff refinanced the Property and borrowed $216,000 from the Defendant (Amended Complaint ¶ 22).[3] Initially the monthly mortgage payments were $1,893.96, exclusive of real estate taxes and property insurance (*Id.*). According to the Plaintiff the loan is an adjustable rate loan with the initial interest rate set at 10.998% (Amended Complaint ¶23) although the only mention of an interest rate in the documents supplied by

---

[2]The redacted Loan Application submitted by Ameriquest is dated "10/27/05," the date of the refinancing closing. The Plaintiff has not challenged the authenticity of the Settlement Statement.

[3]Although the Amended Complaint is silent as to any money the Plaintiff received from the refinancing, the HUD-1A Settlement Statement indicates she received $20,517.40. The Plaintiff has not challenged the authenticity of the Settlement Statement.

Ameriquest is in the Loan Application, which states that the interest rate is 9.990%. In addition the Plaintiff incurred settlement charges of $11,939.36, including $7,560 in loan "discount" points (Amended Complaint ¶ 24).

Shortly after refinancing the Property, the Plaintiff was unable make her monthly mortgage payments and in December 2006 Deutsche Bank National Trust Company as Trustee for the Defendant notified the Plaintiff that her home was scheduled for auction on January 26, 2007 (Amended Complaint ¶¶ 29 and 30). On January 26, 2007 the Plaintiff filed her voluntary petition under Chapter 13 of the Bankruptcy Code thereby stopping the foreclosure. On March 9, 2007 she sent the Defendant a demand letter pursuant to M.G.L. c. 93A asserting that Ameriquest committed unfair or deceptive acts in connection with the refinancing of her home (Amended Complaint ¶ 32). Ameriquest denied liability (Amended Complaint ¶ 33).

On June 27, 2007 the Plaintiff commenced the above adversary proceeding and subsequently filed the Amended Complaint in which she alleges that Ameriquest is liable because it made a loan which it knew or should have known she could not afford to repay. She alleges that the misrepresentations as to her income and the Property's value enticed her into refinancing even though she could not afford the loan. Ameriquest sought an extension to answer or otherwise respond and subsequently filed the Motion to Dismiss now before the Court.

**POSITION OF THE PARTIES**

In Count One of the Amended Complaint, the Plaintiff alleges Ameriquest's conduct violated TILA, specifically 15 U.S.C. § 1639(h), because the Defendant loaned the money after failing to verify her income and without regard to her ability to repay the loan. The same count also refers to the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D

3

("MCCCDA") without reference to any particular section or regulation promulgated thereunder. Ameriquest points out in its pleadings that the Amended Complaint does not actually include an allegation that it violated the MCCCDA; there is simply a statement that the action is brought pursuant to MCCDA as well as TILA. Count Two states that Ameriquest's behavior violated M.G.L. c. 93A ("Chapter 93A") and 940 C.M.R. 8.06. The remaining counts allege that Ameriquest's conduct was fraudulent; that it breached its contract and fiduciary obligations to the Plaintiff; and that it was unjustly enriched by its conduct. The Plaintiff seeks damages for all these alleged violations.

Ameriquest asserts that it is entitled to dismissal of the TILA claim because the loan was not a "high cost" loan under the Home Owner's Equity Protection Act ("HOEPA") and thus neither 15 U.S.C. § 1639(h) nor MCCCDA is inapplicable. Moreover it alleges that the TILA claim is time barred. It argues that its making of the loan did not violate Chapter 93A or 940 C.M.R. 8.06 as the statutes and regulation, applicable at the time the loan was made, did not require a lender to investigate a borrower's ability to repay before making a loan.

Ameriquest seeks dismissal of the fraud count on the basis that fraud has not been pled with particularity as the amended complaint "gives no indication whatsoever as to what exactly was said to plaintiff, who made the statement, and when the statement was made." (Defendant's Memorandum in Support of Motion to Dismiss). It alleges that an action for breach of contract cannot stand as the conduct allegedly giving rise to the action occurred prior to the execution of the refinancing documents and that the Plaintiff has failed to point out any contract term which it breached. It then asserts that the unjust enrichment count cannot stand because the Plaintiff's remedy, if any, must be measured by damages caused by a breach of contract. Finally

4

Ameriquest argues it owed no fiduciary duty to the Plaintiff and therefore that count fails.

The Plaintiff's opposition reiterates what is the crux of the Amended Complaint, namely that the Defendant enticed her into entering a refinancing transaction it knew she could not afford. The Plaintiff does not address, with any degree of specificity, the Defendant's arguments, including whether the loan is a high interest loan or the fact that the adversary proceeding was commenced more than one year after the refinancing occurred. She does not address the applicability of the Massachusetts Attorney General's regulations, specifically 940 C.M.R. 8.06, although the Amended Complaint alleges that the Defendant's behavior violated them. She states that through discovery she will be able to prove that Ameriquest deliberately misrepresented information about her income and the Property's value, which she believes will support not only the Chapter 93A claim but the remaining claims as well.

**DISCUSSION**

In *Bell Atlantic Corp. v. Twombly*, —U.S. —, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007), the Supreme Court explained the standard by which a motion to dismiss is to be decided.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ..., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level ..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

(Internal citations, quotation marks, and footnotes deleted). That the Defendant submitted an affidavit attesting only to the authenticity of copies of the Plaintiff's loan application and the HUD-1A Settlement Statement does not alter the standard. "When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity

of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

**COUNT I: TILA AND MCCCDA**

<u>**THE TILA CLAIM**</u>

> Congress enacted the TILA in 1968 "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit ... practices." 15 U.S.C. § 1601(a). To accomplish this goal, the TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). When creditors transgress this baseline rule, they are subject both to criminal penalties for willful and knowing violations, *see* 15 U.S.C. § 1611, and to debtors' claims for damages, *see id.* § 1640(a).

*McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 421 (1st Cir. 2007). Importantly TILA "is **not** a general prohibition of fraud in consumer transactions or even in consumer credit transactions. Its limited office is to protect consumers from being misled about the cost of credit." *Gibson* v. Bob *Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997)(emphasis added). HOEPA, however, was enacted as an amendment to TILA to provide increased protection to consumers entering into high interest loans ("HOEPA loans") as defined under 15 U.S.C. § 1602(aa). For those borrowers whose mortgages qualify as HOEPA loans, the creditor has an obligation to not extend credit "based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C. § 1639(h). Therefore whether Ameriquest owed a duty to the Plaintiff under § 1639(h) turns on whether the loan was a HOEPA loan.

HOEPA loans, as defined in 15 U.S.C. §1602(aa)(1), are mortgages that are consumer credit transactions "secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan," if[4] one of two circumstances are present, namely:

> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of--
> (i) 8 percent of the total loan amount; or
> (ii) $400.

In this case the Defendant argues that the loan made to the Plaintiff is not a HOEPA loan as the points and fees are less than 8% of the loan amount.[5] "The 8% threshold of section 1602(aa)(1)(B) is calculated through the process of simple division, in which the numerator represents the total of fees and points while the denominator represents the total loan amount." *In re Merriam*, 333 B.R. 22, 28 (Bankr. W.D.N.Y. 2005). Nowhere, however, do either of the parties assert what the "total loan amount" is.[6] Even if the Court assumes that all the fees and

---

[4]Section 1602(w) defines a "residential mortgage transaction" as a "transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Therefore a refinancing is not residential mortgage transaction.

[5]The loan does not qualify as a HOEPA loan under § 1602(aa)(1)(A).

[6]The Court need not explore what fees and points, if any, should be excluded from the calculation under TILA, *see* 15 U.S.C. §§ 1604(aa)(4) and 1605, or what the "total loan amount"

points listed on the HUD-1A Settlement Statement should be included as points and fees, and that the total loan amount is $204,060.64, application of the arithmetic formula (using settlement charges totaling $11,939.36 divided by the loan amount of $204,060.64) yields fees and points that are approximately 5.8% of the total loan amount. Therefore because the loan at issue is not a HOEPA loan, the TILA claim must be dismissed.

Moreover all TILA actions for damages must be brought within one year of the occurrence of the alleged violation. 15 U.S.C. § 1640(e). Actions for rescission must be brought within three years. 15 U.S.C. § 1635(f). *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 419, 118 S.Ct. 1408, 1413, 140 L.Ed.2d 566 (1998) ("We respect Congress's manifest intent by concluding that the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run."). Therefore, even assuming the Plaintiff did state a claim for damages under TILA, her claim would be too late. A claim for rescission, although it would have been timely if made, was not included in the Amended Complaint.[7]

**THE MCCCDA CLAIM**

"The MCCCDA was closely modeled on TILA, *Mayo v. Key Fin. Services, Inc.,* 424 Mass. 862, 864, 678 N.E.2d 1311 (1997), and its provisions should be construed in accordance with TILA. *In re Desrosiers,* 212 B.R. 716, 722 (Bankr. D. Mass.1997)." *In re Hart*, 246 B.R. 709, 738 (Bankr. D. Mass. 2000). In fact MCCCDA is sometimes referred to as the

---

for purpose of the calculation should be but notes that Ameriquest's Memorandum is not helpful. Indeed the brief contains only the conclusory allegation "[i]t is without dispute that plaintiff paid fees and closing that, within the definitions of Section 1602(aa) and 209 C.M.R. § 32.32, amounted to less than 5% of the total loan." Defendant's Memorandum at 5.

[7]The Court is not making any determination with respect to whether the Plaintiff could state facts to support a claim for rescission, only that she has not pled such a claim.

"Massachusetts TILA."[8]  Unlike TILA, however, claims for damages for violations of MCCCDA may be brought within four years of their occurrence, M.G.L. c. 260 § 5A, as may claims for recission.  M.G.L. c. 140D § 10.

Claims under MCCDA can arise from non-disclosures, inaccurate disclosures, and with respect to certain transactions, untimely disclosures.  S*ee e.g.*, M.G.L. c. 140D § 12.  With respect to high interest loans as defined by 209 C.M.R. 32.32, additional disclosures are required and liability can also arise by certain affirmative acts.  *See, e.g.*, 209 C.M.R. 32.32 (3), and (4).

In the instant case, the Amended Complaint contains the following allegations that arguably could support a claim under MCCCDA:

> 25.  On information and belief, Ameriquest failed to provide

---

[8] As Judge Young recently explained

> MCCDA, Mass. Gen. Laws ch. 140D, §§ 1-35, is TILA's state counterpart. The Federal Reserve Board has granted some exemptions to TILA in Connecticut, Maine, Massachusetts, Oklahoma, and Wyoming. 12 C.F.R. Pt. 226, Supp. I  12 C.F.R. § 226.29(a) ¶ 4. In these few states, as to certain TILA requirements, certain federal provisions have no force and creditors are subject to state requirements that are generally similar to the federal requirements. See *Belini v. Washington Mut. Bank, FA,* 412 F.3d 17, 20 (1st Cir.2005) (citing *Ives v. W.T. Grant Co.,* 522 F.2d 749, 755 (2d Cir.1975)). According to the Federal Reserve Board's regulations, however, the exemption's displacement of federal law in favor of state law is not absolute. 12 C.F.R. § 226.29(b). It is well established that debtors retain at least the ability to file suits for damages in federal court pursuant to 15 U.S.C. § 1640, regardless of the exemption. *Belini,* 412 F.3d at 20.

*Carye v. Long Beach Mortg. Co.*, 470 F. Supp.2d 3, 6 (D. Mass.2007).

> timely and accurate information to Ms. Vincent concerning the amount and purpose of the "discount points" she incurred with her loan.
>
> 26. On information and belief, Ameriquest made deceptive and misleading misrepresentations or omissions regarding loan terms and charges including but not limited to, (i) the interest rate of the loan, (ii) the material costs of the proposed loan, and (iii) whether the proposed loan included escrowed taxes and insurance.

The HUD-1A Settlement Statement discloses the "discount points" and appears to have been delivered at the closing. There is no indication that it was not delivered before the Plaintiff signed the note and mortgage. The Plaintiff has not pled, beyond the mere use of the word "untimely," that she was given this disclosure later than MCCCDA requires. M.G.L. c. 140D § 12(b)(1) ("Except as otherwise provided in this chapter, the disclosures required under subsection (a) shall be made *before* the credit is extended.")(emphasis added). Moreover M.G.L. c. 140D § 12(b)(2), which does require disclosures earlier than at the closing applies to only "residential mortgage transaction[s]," a term which by its very definition does not including refinancings. M.G.L. c. 140D § 1.[9] The use of the word "untimely" is a conclusion which is insufficient "to raise a right to relief above the speculative level...." *Bell Atlantic* Corp., 127 S.Ct. at 1965. Nowhere in the Amended Complaint does the Plaintiff state when she first received the disclosures.

Moreover, nothing in the allegation or the Amended Complaint alleges in what way the disclosure of the amount of the discount points as set forth on the HUD-1A Settlement Statement was misleading. Indeed the only other reference in the Amended Complaint to the discount points is in paragraph 24, which states she incurred $7,560 in discount points. That is the exact

---

[9] The definition of residential mortgage transaction in M.G.L. c. 140D § 1 tracks the TILA definition found in 15 U.S.C. § 1602(w). See footnote 4.

amount reflected on the Settlement Statement. She does allege, however, she was not told of purpose of the discount points, which goes to their *bona fide* nature under 209 C.M.R. 32.32(2)(d) as discussed below.

With respect to the allegations of paragraph 26, the Defendant assumes that the Plaintiff, although she never addresses the legal basis for the claim, is relying upon the additional disclosure requirements contained in 209 C.M.R. 32.32(3). Those disclosures are only applicable if her loan is a high cost loan under the Massachusetts regulations, specifically 209 C.M.R. 32.32(1)(a). 209 C.M.R. 32.32 (1)(a)(2), the only subsection arguably applicable in this case, covers loans which '[e]xcluding either a conventional prepayment penalty or up to two *bona fide* discount points, the total points and fees payable by the consumer at or before the closing will exceed the greater of 5% of the total loan amount or $400 [adjusted annually ]." Because the Defendant loaned $216,000, in order to meet the threshold of greater than 5%, the points and fees must exceed $10,800.[10] Although the Plaintiff alleges she incurred $11,939.36 in settlement charges, not all settlement charges are points or fees. The $1,655.36 of interest charged as a settlement charge is not included in the calculation of points and fees. 209 CMR 32.32(2)(a)(1)(a). This deduction from the settlement charges, without more, is sufficient to bring the fees and points under 5%, even if all other charges were included.[11] Therefore the loan

---

[10] The total loan amount under Massachusetts law, unlike under TILA, is simply the face amount of the note. 209 C.M.R. 32.32(2)(l).

[11] All points and fees are not included in the calculation. For example, 2 of the 3.5 discount points, which is $4,320, may be deducted from the total points and fees provided they are *bona fide*, that is that they were knowingly paid for the express purpose of lowering the benchmark rate and in fact so lowered the rate. 209 C.M.R. 32.32(2)(d). 209 C.M.R. 32.32(3) lists the charges to be excluded. These include the application fee charged to all applicants (§ 32.32(3)(a)); and fees for title examination, abstract of title, title insurance, appraisal fees,

is not covered by the special provisions of § 32.32.

Finally, the Amended Complaint states that the annual percentage rate for the Debtor's loan was 10.998%. Ameriquest states that the rate was, as disclosed, 9.990%. Whether the loan is a high interest loan or not, the disclosure of the interest rate cannot be deceptive. The Plaintiff gives no indication of how she calculated the annual percentage rate so it is unclear whether the 10.998% rate was indeed charged on the loan. Yet the Amended Complaint does not actually allege that this inaccuracy violated MCCCDA; indeed the Amended Complaint says only that the loan is subject to MCCCDA. The Plaintiff will be given thirty days to file a further amended complaint, failing which Count One will be dismissed in its entirety.

**COUNTS TWO and THREE: THE CHAPTER 93A and FRAUD CLAIMS**

Ameriquest argues that the Chapter 93A claim must be dismissed because neither the statute nor regulations promulgated thereunder imposed a duty on the lender to investigate the suitability of a loan before making it. At the time this loan was made, 940 C.M.R. 8.06(6) provided

> It is an unfair or deceptive practice for a mortgage broker or lender to procure or negotiate for a borrower a mortgage loan with rates or terms which *significantly deviate from industry-wide standards* or which are *otherwise unconscionable.* (Emphasis added).

It did not impose a duty on a lender to investigate the suitability of the loan, including the borrower's ability to repay.[12] As the Plaintiff has not alleged the terms of the loan deviated from

---

including food hazard determinations (§ 32.32(3)(g)(1)(2) and (4)), provided the fees listed in § 32.32(3)(g) are *bona fide* and reasonable in amount.

[12]The Attorney General issued new regulations, which became effective on January 2, 2008. These regulations do impose a suitability requirement. For example, under these new regulations, a lender (as well as a mortgage broker) commits an unfair or deceptive act or

12

industry standards or is otherwise unconscionable, the regulation does not support a claim.

Yet the Plaintiff may still have a claim under Chapter 93A. If she is successful on a claim under MCCCDA, then as a matter of law, she will prevail under chapter 93A. 940 C.M.R. 3.16(3)("" Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A § 2 if ...it fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare, promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of Massachusetts protection...."). Moreover, while TILA and MCCCDA violations are violations of Chapter 93A, not all Chapter 93A violations are TILA and MCCCDA violations. Indeed while liability can be imposed in some instances when there is no duty to speak, here the Plaintiff has set forth allegations of affirmative conduct in that the Defendant's employee knowingly and fraudulently filled out the Plaintiff's loan application in order to have the Plaintiff enter into a transaction she could not afford. If ultimately proven to be true, such behavior, in addition to potentially constituting actual fraud, falls squarely within the ambit of Chapter 93A § 2.

Ameriquest's assertion that fraud has not been pled with the particularity required by

---

practice if it reasonably believes, based on the information known to the lender, that the borrower can repay, or if the lender fails to verify the borrower's income, or if the loan is not in the borrower's best interest. 940 C.M.R. 8.06(15), (16), and (17). The regulations, however, should not be applied retroactively. *Yates v. General Motors Acceptance Corp.*, 356 Mass. 529, 531, 254 N.E.2d 785, 787 (Mass. 1969)("[A]ll all legislation commonly looks to the future, not to the past, and has no retroactive effect unless manifestly required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action.").

Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, is misplaced. "Generally, there are three purposes behind Rule 9(b)'s particularity requirement: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *New England Data Services, Inc. V. Becher,* 829 F.2d 286, 288 (1st Cir. 1987). The Plaintiff need not recite the "exact" words nor must she identify the exact date of her telephone conversation and identity of the Defendant's employee when those facts are already known to Ameriquest. The loan application contains a file number and the telephone interviewer's name, certainly enough information for Ameriquest to identify who spoke on its behalf to the Plaintiff.

**COUNTS FOUR and SIX: BREACH OF CONTRACT and BREACH OF FIDUCIARY DUTIES**

The Defendant is correct in noting that the Plaintiff has not identified any way in which the Defendant breached the contract. Instead she argues she and the Defendant never should have entered into the contract. This is not a claim for breach of contract and therefore that count will be dismissed.

As set forth above, the Plaintiff has not alleged facts which give rise to a fiduciary duty on the part of the Defendant to make sure that the loan was suitable based on her circumstances. Absent the special duties imposed by TILA and MCCCDA, her relationship was as a consumer of Ameriquest's services. "[G]enerally there is no fiduciary duty between a bank and a borrower.... Traditionally, Massachusetts courts have viewed a bank's relationship to its customers as one of creditor and debtor, a relationship which imposes no duty to counsel or make disclosures to the customer." *In re Sullivan,* 346 B.R. 4, 21 (Bankr. D. Mass. 2006). That

the Plaintiff alone placed trust in Ameriquest is not enough to transform the relationship into a fiduciary one. *Id.* Therefore this count will also be dismissed.

### COUNT FIVE: UNJUST ENRICHMENT

To establish a claim for unjust enrichment, a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *In re Lupron Marketing and Sales Practices Litigation*, 295 F.Supp.2d 148, 182 (D. Mass.2003). Where there is an adequate remedy at law, an action for unjust enrichment is not available. *Id.* Although the Defendant argues that the unjust enrichment claim cannot go forward because the Plaintiff has a contract which governs the measure of damages, the Court disagrees. As Ameriquest concedes in advocating the dismissal of the breach of contract count, the behavior which the Plaintiff identifies as giving rise to her complaint occurred prior to the loan closing. Thus the action is not covered by breach of contract. Yet the Plaintiff has made out, for the purposes of this motion only, a claim under Chapter 93A which, if proved, will govern the calculation of damages. Therefore the unjust enrichment count cannot stand. *Id.* (Court dismissed unjust enrichment count where plaintiffs had action under RICO).

### CONCLUSION

For the foregoing reasons Counts One with respect to TILA, Four (Breach of Contract), Five (Unjust Enrichment), and Six (Breach of Fiduciary Duties) will be DISMISSED. The Plaintiff may amend Count One with respect to MCCCDA within 30 days of the date of this order. A separate order will issue.

Dated: January 18, 2008

_____
Joel B. Rosenthal
United States Bankruptcy Court